UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| CSP TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 4:11-cv-00029-RLY-WGH |
| SUD-CHEMIE AG, | ) | |
| SUD-CHEMIE, INC., | ) | |
| AIRSEC S.A.S., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON CLAIM CONSTRUCTION**

Plaintiff, CSP Technologies, Inc. ("CSP"), is a leading innovator in the field of plastic packaging.  It owns a number of patents directed toward desiccant entrained polymers and other sealing technologies, which it incorporates into its product packaging to ensure a moisture-free environment for products such as diagnostic test strips. Defendants, Süd Chemie AG, Süd Chemie, Inc., and Airsec S.A.S., are direct competitors of CSP in the field of product packaging for diagnostic test strips, and were, in fact, prior parties in a patent infringement lawsuit, filed in 2003 in the Southern District of Indiana, relating to desiccant entrained polymers used in the packaging of, for example, diagnostic test strips for diabetic patients. *See Sud-Chemie, Inc. v. CSP Tech., Inc.*, No. 4:03-cv-003-SEB-WGH.

1

The patent at issue in the present case is CSP's United States Patent No. 7,537,137, entitled "Resealable Moisture Tight Container Assembly For Strips And The Like Having A Lip Snap Seal" (the '137 patent®).  As suggested by its title, this patent relates generally to a substantially moisture-tight container and lid assembly for storing and packaging moisture-sensitive items.  CSP alleges that the Defendants are infringing claims 1-5 and 7 of the '137 patent by, *inter alia*, manufacturing, selling and/or importing the accused vial products in the United States.  Defendants counterclaimed (once amended), alleging that Defendants' accused vial products do not infringe the '137 patent, the '137 patent is invalid in light of the prior art, and the '137 patent is unenforceable due to CSP's inequitable conduct before the Patent and Trademark Office ("PTO").

The court's infringement analysis involves two steps: claim construction of the asserted claim and a determination of whether the accused method or process infringes the asserted claim.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).  The only issue before the court is the construction of four terms found in independent claims 1 and 7 of the '137 Patent.  In this regard, the parties filed claim construction briefs and orally argued their respective positions on January 9, 2013.  This Entry provides the court's construction of those contested terms.

I.      **Background of the Invention**

The '137 patent, filed on June 30, 2005, is a continuation-in-part of United States Patent No. 7,213,720 ("'720 patent"), filed as Application No. 10/683,311 on October 10,

2003.  The '137 patent claims priority to the '720 patent and priority to Provisional Application No. 60/417,533, filed on October 10, 2002.

As noted in the introduction, the '137 patent relates generally to a resealable container and lid assembly having a lip snap seal for the storing and packaging of moisture-sensitive items, "including, but not limited to edible breath-freshening strips, drug delivery strips, diagnostic test strips, and effervescent tablets."  ('137 patent, col. 1, ll:16-20).  Container and lid assemblies of this sort (but not necessarily covered by the '137 patent) are used to package consumer products such as Listerine® Breath Strips, Airborne® effervescent tablets, and M&M's® Minis.

Generally, the inventors of the '137 patent describe the lid of the container as being attached to the container by a hinge.  (*Id.*, col. 1, ll: 54-55).  The lid of the container features a "skirt" and a "lip seal member" that extends downward from the top of the lid. ('137 patent, col.1, ll:59-61, col. 2, ll:30-31, col. 4, ll:33-35, col. 7, ll:6-20 (describing that portion of the lid as having a "flexible lip seal member")).  The "skirt" of the lid has an inwardly facing extension that "abuts and interlocks" with a corresponding outwardly facing extension on the "lip" of the top of the container when in the closed position.  (*Id.*, col. 7, ll: 7-11).  In addition, the "flexible lip seal member" on the lid interacts with the interior portion of the lip of the top of the container to form what the '137 patent refers to as the "lip seal."  (*Id.*, col. 2, ll:30-31; col. 4, ll:18-41; col. 7, ll:6-20).

Before the PTO issued the '137 patent, CSP amended its claims a number of times.  The specific amendments, and their effect, if any, on the claim construction and scope of the claim terms at issue, will be explained in more detail below.

3

## II.     The Law of Claim Construction

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).  The purpose of claim construction is to determine the meaning and scope of the claims that are the subject of an infringement action.  *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  When the parties raise a genuine dispute regarding the proper scope of an asserted patent claim, the court resolves the dispute as a matter of law.  *Id.*

The claim construction process "'begins and ends in all cases with the actual words of the claim.'"  *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  In the absence of a contrary intent, the words in a claim are given their ordinary and customary meaning. *Id.* at 1325; *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("[A] court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms.").  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention." *Phillips*, 415 F.3d at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed claim appears, but in the context of the entire patent, including the specification."  *Id.*

4

The Federal Circuit describes the patent specification as "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.  The patent specification may "act[] as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id*. (citing *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995)).  Yet, a court must be careful to avoid limiting the construction of claim terms based upon those descriptive statements. *Phillips*, 415 F.3d at 1323; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) (recognizing "'the fine line between reading a claim in light of a specification, and reading a limitation into the claim from the specification'") (quoting *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998))).  "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d 1323.

Another source of intrinsic evidence relevant to claim interpretation is the prosecution history of the patent. *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

> This history contains the complete record of all proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims.  As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of claims.

*Vitronics*, 90 F.3d at 1582 (citations omitted).

Lastly, if necessary, the court may also examine extrinsic evidence to assist in determining the meaning of the disputed claim language. *Id.* at 1584. Extrinsic evidence, such as expert testimony, inventor testimony, and dictionaries, "may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language." *Id*.

## III.   The Court's Claim Construction

The terms at issue, found in independent claims 1 and 7, are: (1) "an opening . . . wherein the opening is spaced away from an outer surface of the sidewall of the container"; (2) "a closing relationship"; (3) "an upper housing portion of the container"; and (4) "substantially moisture tight."

### A.   "an opening . . . wherein the opening is spaced away from an outer surface of the sidewall of the container"

| CSP | Süd Chemie |
|---|---|
| The claim should be accorded its plain meaning.[1] | An opening that is spaced away from the sidewall of the container. In other words, an opening that is spaced away from the outer surface of the sidewall of the container **by more than the thickness** of the sidewall. |

Claims 1 and 7 recite, in pertinent part:

1.   A substantially moisture tight container and lid assembly for storing and packaging moisture-sensitive items comprising:  an assembly with a container and a lid,

---

[1] At the *Markman* hearing, CSP informed the court that, even though its briefing requests the claim be construed to include the phrase "by at least a portion of the thickness of the sidewall," construction of the disputed claim language was not necessary because it involves commonly understood terms.  (Hearing Tr. at 58-59).

a)     the lid is attached by a hinge to an upper housing portion of
the container, the lid has an outer periphery that extends over
at least a portion of the container, the lid is provided with a
skirt that extends downwardly therefrom,

b)     the container has a container base, and a sidewall extending
upwardly from the container base,

i)     a top of the container is provided with an opening that
permits access to an interior of the container, *wherein
the opening is spaced away from an outer surface of
the sidewall of the container. . .*

('137 patent, col. 6, ll:49-63).

Süd Chemie contends that the opening must be spaced away from the outer

surface of the sidewall of the container by more than the thickness of the sidewall.  In

other words, the opening of the top of the container must be spaced inward from the

sidewalls of the container, such that the diameter of the opening (based upon the

assumption that the container and sidewalls are circular) is smaller than the diameter of

the container walls.  CSP does not agree.

The specification of the '137 patent contains 14 figures depicting different

container and lid assemblies.  The parties' dispute is best exemplified by the container

and lid assemblies depicted in Figures 1 and 10.  Figure 1 depicts an opening spaced

inward from the sidewall of the container; as described by Süd Chemie, it is spaced away

by more than the thickness of the sidewall.  Figure 10 depicts an opening in line with the

sidewalls of the container.  Both parties agree that Figure 10 depicts the accused vial-

shaped container and lid assembly manufactured and sold by Süd Chemie.  The issue

raised is whether the asserted claims of the '137 patent read only on containers shaped

like those in Figure 1, or whether the claims also read on containers shaped like those in Figure 10.

One of the arguments raised by CSP is that the disputed claim limitation – an opening spaced away from an outer surface of a sidewall of a container – does not need to be construed because those words of limitation have an ordinary and customary meaning to one skilled in the art.  (*See* Hearing Tr. at 58-59); *Phillips*, 415 F.3d at 1312-13; *Victronics*, 90 F.3d at 1582.  The Federal Circuit teaches, however, that claim terms must be read in light of the claims and specification of the asserted patent, and, if in evidence, the prosecution history.  *Phillips*, 415 F.3d at 1313 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd*., 133 F.3d 1473, 1477 (Fed. Cir. 1998)).  Because the claims and the specification do not shed any additional light on the meaning of the disputed claim language, the court turns to the prosecution history.

### 1.    Prosecution History

As originally filed, claim 1 of the '137 patent was directed to a "substantially moisture tight container and lid assembly" having, *inter alia*, an "opening" in a "top container surface [that] extends inward from the sidewalls."  (Prosecution History ("PH") at CSP000273, ll:5-7).  Following an exchange between the PTO and CSP relating to aspects of the container and lid assembly other than the opening, the PTO issued a Notice of Allowance for claims that included a limitation requiring an "opening" in a "top container surface [that] extends inward from the sidewall of the container."  (*Id*. at CSP000330-31 (allowable claims) and CSP000343 (identifying allowable subject matter)).

8

CSP then filed a Request for Continued Examination with a Preliminary Amendment in order to, *inter alia*, remove the limitation of a "top container surface [that] extends inward from the sidewall of the container" and replace it with a "top of the container." (*See id*. at CSP000384-87). CSP represented that support for the limitation "can be found, for example, in Figure 10." (*Id*. at CSP000388).

Following that amendment, the PTO Examiner and CSP had an interview to discuss various prior art references, including U.S. Patent Nos. 5,474,177 ("Abrams '177") and 5,667,094 ("Rapchak '094"), both of which resemble the container and lid assembly shown in Figure 10 of the '137 patent, in that the containers covered by those patents both have an opening that is in line with the sidewall of the container. (*Compare* '137 patent at Figure 10, *with* Rapchak '094 at Figure 1, *and* Abrams '177 at Figure 6). The Examiner noted CSP's arguments in support of patentability over the prior art, and ended the discussion by noting:

> It was suggested by the examiner to include the limitation of the opening being spaced away form [sic] the side wall of the container. Reconsideration including an updated search will be performed upon receipt of applicant's supplemental amendment.

(*Id*. at CSP000409).

CSP then amended the pending claims to include a limitation that "the opening is spaced away from the *outer surface* of the sidewall of the container." (*Id*. at CSP000399-403) (emphasis added). CSP also added new claim 10 (now issued as claim 7), which did not include this "opening" limitation, but did recite, *inter alia*, "a flexible lip seal member" that "is designed to be sufficiently deflective so as to provide a sealing

9

position." (*Id*. at CSP000402-03).  The Examiner amended new claim 10 to include the limitation that "the opening is spaced away from the outer surface of the sidewall of the container," making new claim 10 identical in scope to claim 1.  (*Id*. at CSP000422).  The PTO then issued a Notice of Allowance.  (*Id*. at CSP000426).

The prosecution history of claim 9 reflects a similar exchange between CSP and the Examiner. Although CSP has not asserted infringement of this claim, "[o]ther claims of the patent in question . . . can [] be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314.  In claim 9, as with claim 10 above (now claim 7), the Examiner suggested that CSP add a limitation that required "the opening [to be] spaced away from the side wall of the container," and stated that "[r]econsideration including an updated search will be performed upon receipt of applicant's supplemental amendment." (*Id.* at CSP000409).  In response to the Examiner's suggestion, CSP amended new claim 9 to include the limitation "wherein the opening [is] spaced away from an outer surface of the sidewall of the container." (*See id*. at CSP000401-02).  The Examiner then allowed claim 9, which issued as claim 6 of the '137 patent.  (*See id*. at CSP000426-28; '137 patent, col. 7, l:40 – col. 8, l:18).

## 2.  Prosecution Disclaimer

As a result of the exchange between CSP and the Examiner, Süd Chemie argues that CSP disavowed or disclaimed containers that have an opening in line with the sidewalls of the container (such as vial-shaped containers) during prosecution in order to gain allowance of the patent.  "The doctrine of prosecution disclaimer attaches where an applicant, whether by amendment or by argument, 'unequivocally disavowed a certain

meaning to obtain his patent.'" *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d

1275, 1285 (Fed. Cir. 2010) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314,

1324 (Fed. Cir. 2003)).  Such "[d]isclaimers based on disavowing actions or statements

during prosecution . . . must be both clear and unmistakable." *Sorenson v. Int'l Trade*

*Comm'n*, 427 F.3d 1375, 1378-79 (Fed. Cir. 2005) (citing *Omega*, 334 F.3d at 1326)).

"An 'ambiguous disclaimer' will not suffice."  *Schindler*, 593 F.3d at 1285 (citation

omitted).

    As noted previously, the Examiner's suggested limitation — "the opening being

spaced away from the side wall of the container" — covers only configurations with an

opening spaced inward from the sidewalls of the container, like that shown in Figure 1;

whereas CSP's suggested limitation covers vial-shaped configurations, like that shown in

Figure 10.  According to CSP, it is nonsensical to say that it clearly and unmistakably

disclaimed vial-shaped configurations when the limitation it included in amended claims

1 and 7 (and for that matter, claim 6), which were approved by the Examiner and

included in the asserted claims, covers vial-shaped containers.  Indeed, with respect to

claim 10 (now claim 7), the Examiner *added* that limitation before issuing the patent.

    "'It is the applicant, not the examiner, who must give up or disclaim subject matter

that would otherwise fall within the scope of the claims.'"  *See Sorensen*, 427 F.3d at

1379 (quoting *Innova/Pure Water*, 381 F.3d at 1124)..  In the present case, CSP

advocated for a broader limitation than the Examiner suggested, and the Examiner, after

performing an updated search of the prior art, approved that limitation. Whether the

Examiner overlooked the distinction between "sidewall of the container" and "outer

surface of the sidewall" prior to allowing the claims is beside the point.  On this record, the court cannot say, as a matter of law, that *CSP* clearly and unmistakably *disclaimed* containers where the opening is in line with the sidewalls of the container.

The meaning of the disputed claim language is clear and unambiguous – the container opening is "spaced away from an outer surface of the sidewall of the container."  Without any express relinquishment of claim scope during prosecution, the "'heavy presumption' that claim terms carry their full ordinary and customary meaning" applies.  *Omega*, 334 F.3d at 1323 (citation omitted).  Accordingly, the court finds the disputed claim language need not be construed.

**B.    "an upper housing portion of the container"**

| CSP | Süd Chemie |
|---|---|
| The claim should be accorded its plain meaning. | An upper housing portion of the container **that is separate and distinct from the container base**. |

Claims 1 and 7 recite, in pertinent part:

1.    A substantially moisture tight container and lid assembly for storing and packaging moisture-sensitive items comprising:  an assembly with a container and a lid,

   a)    *the lid is attached by a hinge to an upper housing portion of the container*, the lid has an outer periphery that extends over at least a portion of the container, the lid is provided with a skirt that extends downwardly therefrom,

   b)    the container has a container base, and a sidewall extending upwardly from the container base,

      i)    a top of the container is provided with an opening that permits access to an interior of the container . . . .

12

(*See, e.g.,* '137 patent, col. 6, ll:49-59).  The crux of the parties' dispute centers again on whether the disputed claim language contemplates one-piece containers with a lid (CSP), or whether this language contemplates two-piece containers with a lid (Süd Chemie).

Looking solely at the words of the claim, CSP contends that subpart (a) of claims 1 and 7 are focused on describing features of the lid; whereas subpart (b) is focused on describing features of the container.  Thus, according to CSP, "an upper housing portion of the container" merely describes where on the container the hinge attaches.

CSP's argument would hold more weight were the term "housing" not included in the disputed phrase.  The term's inclusion in the claim is meant to describe that portion of the container that "houses" something.  Although the inventors did not define the term "housing" in the specification or prosecution history, the court's understanding of the meaning of the term to one of skill in the art is aided by resort to the dictionary.  *Phillips*, 415 F.3d at 1318 (noting that dictionaries may be useful tools to assist the court in understanding the meaning of particular terminology to those skilled in the art); *see also Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("A court may look to extrisinic evidence so long as the extrinsic evidence does not contradict the meaning otherwise apparent from the intrinsic record.").  The dictionary definition of "housing" is "something that covers or protects."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 603, (11th ed. 2006).  As a result, the "upper housing portion" of the container must mean a portion of the container that "covers or protects" something else.

The context of the surrounding words of the claim is also highly instructive. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003)).  Subpart 1(b) of claim 1 describes a container base with sidewalls extending upward, and describes a top of the container" that has "an opening that permits access to an interior of the container . . . ." (*Id.*, ll:60-61).  Thus, subparts 1(a) and (b) of claim 1 describe the container as having a lid, a hinge, an upper housing portion, a container base with sidewalls extending upward, and a container top.

The court's reasoning is bolstered by the '137 patent's specification, which describes the upper housing portion and the container base as separate and distinct pieces of the container that are molded separately and then joined together. (*Id.*, Abstract (stating that the "container assembly" is comprised of  "a base portion and an upper housing portion, the upper housing portion is capable of being snap-fit into the base portion . . .); *id.*, col. 2, ll:26-30; col. 3, ll:7-9; col. 4, ll:18-28; *see also id.*, Figures 2, 6, 7, 14).   In fact, each time the specification uses the term "upper housing" to describe the container, the specification describes the container as having an upper housing and a separate and distinct container base.  (*Id.*, Abstract; *id.*, col. 2, ll:26-30; col. 3, ll:7-9; col. 4, ll:18-28).

Accordingly, the court finds that the term "upper housing portion of the container" should be construed as "an upper housing portion of the container that is separate and distinct from the container base."

**C.**   **"a closing relationship [between the skirt of the lid and the lip of the top of the container]"**

| CSP | Süd Chemie |
|---|---|
| This term should be accorded its plain meaning.[2] | An abutting and interlocking arrangement between the extension of the skirt and the extension of the lip of the top of the container **that forms a seal** between the skirt and the lip when the lip is in the closed position. |

The language at issue appears in claims 1 and 7, subparts (b)(iii) & (iv):

(iii)   the skirt of the lid is positioned at a location on the lid that allows the skirt of the lid to enter into a *closing relationship* with the lip of the top of the container, wherein the skirt of the lid fits over a periphery of the lip of the top of the container,

(iv)   the lid further includes a *flexible lip seal member* that extends downwardly therefrom, the flexible lip seal member of the lid is configured *to abut at least a portion of the interior side of the lip of the top container surface when the lid is in the closed position*,

wherein the flexible lip seal member is designed to be sufficiently deflective so as to provide a *sealing position, in addition to the closing relationship* between the skirt of the lid and the top of the container when the lip of the top of the container applies pressure on the flexible lip seal member from the outside in, which *in combination with the closing relationship* between the skirt of the lid and the lip of the top of the container results in a *substantially moisture tight seal* between the lid and the container, and

wherein . . . the inwardly facing extension of the skirt of the lid and the outwardly facing extension of the lip abut and interlock with each other in a snap-fit configuration when the lid is in the closed position.

---

[2] In its briefing, CSP sought construction of the term as "a connection or association between the skirt of the lid and the lip of the top of the container when the skirt of the lid and the lip of the top of the container are brought into contact with each other." At the *Markman* hearing, however, CSP represented that it "would be fine accepting the plain and ordinary meaning" of the claim term. (Hearing Tr. at 64).

('137 patent, col. 7, ll:1-26). Thus, each of the asserted claims requires "a closing relationship" between the skirt of the lid and the lip of the top of the container. In addition, each of the claims require a "sealing position" between the lid's flexible lip seal member and the lip of the top of the container. The parties' dispute centers on whether the asserted claims require a "closing relationship" between the skirt of the lid and the top of the container (CSP), or whether the claims require a "seal" between the two (Süd Chemie). Put simply, the dispute is whether the asserted claims contemplate one seal (CSP) or two seals (Süd Chemie).

"[D]ifferent claim terms are presumed to have different meanings." *Helmsderfer*, 527 F.3d at 1382; *see also Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) ("There is an inference . . . that two different terms used in a patent have different meanings."). This inference is not conclusive, however, and may be rebutted with evidence to the contrary. *Comaper Corp.*, 596 F.3d at 1348.

Süd Chemie attempts to rebut this presumption by reference to the specification and prosecution history. In one embodiment described in the specification,

> The skirt is positioned at a location on the base portion [of the lid] that allows the skirt to enter into a *closing relationship* with the lip of the container portion . . . . In effect, the extension on the skirt and the extension on the lip face each other. In constructing this arrangement on the skirt and lip, the extensions will abut and interlock with each other when the lid is closed on the container portion. *In this arrangement, the interlocking, abutting extensions [of the skirt and the lip of the container] will form at least a substantially moisture-tight sealing arrangement with each other*.

CSP acknowledges this particular embodiment from the '137 patent specification, but contends that it abandoned this feature – *i.e*., the sealing arrangement between the skirt of

16

the lid and the top of the container – during the patent's prosecution.  As shown below, the prosecution history supports CSP's argument.

CSP's original patent application included claims that claimed a sealing arrangement between the skirt of the lid and the top of the container: "the skirt is configured at a location on the base portion that allows the skirt to enter into a sealing relationship with the container."  (PH at CSP000273).  Through a series of amendments, CSP deleted references to this "sealing relationship."  (*See id*. at CSP000330-31 & CSP000384-85).  CSP then amended its claims to recite, for example, that "the skirt of the lid is positioned at a location on the lid that allows the skirt of the lid to enter into a closing relationship with the lip. . . ."  (*See id.* at CSP000330-31).  Under binding Federal Circuit precedent, the court may not read back into the claims limitations which were originally there and were removed during prosecution of the patent application. *Laryngeal Mask Co., Ltd. V. Ambu*, 618 F.3d 1367, 1372-73 (Fed. Cir. 2010) (citing *Kistler Instrumente AG v. United States*, 628 F.2d 1303, 1308) (Ct. Cl. 1980)).

Still, Süd Chemie contends that an argument raised by CSP to overcome a prior art objection evidences "an unmistakable disclaimer and surrender of any construction of 'closing relationship' that does not require a seal."  (Süd Chemie's Opening Claim Construction Brief at 28-29).  More specifically, CSP represented to the Examiner that claim 10 (now claim 7) "expressly distinguishes over the Anderson[3] complex FIVE seal

---

[3] The Anderson patent "discloses, teaches, and suggests a container for paint."  (*Id*. at 404).

mechanism because the seal is limited to **TWO** seals resulting in a substantially moisture tight seal between the lid and the container."  (PH at CSP000405).

CSP's use of the singular and plural forms of "seal" in the same sentence is not a "clear and unmistakable" statement that the "closing relationship" is a "sealing relationship."  *Omega*, 334 F.3d at 1325-26.   Instead, it creates an ambiguity.  Further, when discussing the Anderson patent during prosecution, CSP noted that the Anderson patent's sealing mechanism was made up of "three annular beads and [] two V-seals." (PH at CSP000404).   The court is not familiar with the Anderson patent and its sealing mechanism; accordingly,  it is not clear whether the Anderson patent actually disclosed five "seals," as that term is used in the '137 patent, or whether it disclosed two seals that interlocked in some fashion with the three annular beads.  Without some understanding of the Anderson patent's sealing mechanism, the court is unable to determine whether CSP's use of the term "TWO SEALS" as a means of distinguishing its patent application from the Anderson patent, comports with how that term is used in the claims now at issue.  Indeed, the "TWO SEALS" statement was directed to claim language that CSP later amended.  (*Compare* '137 patent, claims 1 & 7, *with* PH at CSP000402-03, 405; *see also* CSP000422-24).

In conclusion, the court returns to the words of the claims at issue.  The verbs "close" and "seal" have different meanings that are "readily apparent even to lay judges." *Phillips*, 415 F.3d at 1313 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges."). One may close a door, but that does not mean that the door is sealed shut.  This analogy

18

applies with equal force to the patent's use of those terms.  Moreover, the asserted claims provide that the "closing relationship" between the skirt of the lid and the top of the container works in combination with the flexible lip seal member to form *a substantially moisture tight seal.*  (*See* '137 patent, col. 7, ll:1-19).  The plain wording of claims 1 and 7 reflects that: (1) the claims claim one seal, not two; and (2) the "closing relationship" of the skirt of the lid and the top of the container and the "flexible lip seal member" work in tandem in that, with reference to the door analogy above, the container must be shut (the closing relationship) in order for the container to seal (by virtue of the flexible lip seal).  Accordingly, the court finds that the term "closing relationship" should be accorded its ordinary and customary meaning, and need not be construed.

**D.     "substantially moisture tight"**

| CSP | Süd Chemie |
|---|---|
| To substantially prohibit the ingress of moisture into the container assembly through the lid when the container is sealed. | The moisture ingress of the container after three days is less than substantially about 1500 micrograms of water. |

Each of the asserted claims of the '137 patent requires "a substantially moisture tight seal between the lid and the container."  (*See, e.g.,* '137 patent, col. 7, ll:18-19).  "[T]he term 'substantially' is a descriptive term commonly used in patent claims to 'avoid a strict numerical boundary to the specified parameter.'"  *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (quoting *Pall Corp. v. Micron Seps.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995)).  The specification, on the other hand, purports to give a numerical moisture ingress value and/or range for embodiments of the invention based upon a specific test method measured over a period of days:

19

As used herein, the terms Âmoisture-tight@ and Âmoisture-sensitive@ mean the moisture ingress of the container (after three days) was less than about 1500 micrograms of water, in another embodiment, about 500 micrograms of water, in a further embodiment, about 300 micrograms of water, in yet another embodiment, about 150 micrograms of water determined by the following test method: [explanation of test follows].

('137 patent, col. 6, ll:32-47). The issue raised is whether CSP acted as its own lexicographer and defined the term "moisture tight" by reference to the numerical ingress values set forth in the specification (Süd Chemie), or whether those numerical ingress values were included only for illustrative purposes (CSP).

Although the words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art, a patentee may define claim terms and act as his or her own lexicographer. *Thorner v. Sony Computer Entm't Am., LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term that differs from its plain and ordinary meaning in the patent specification or prosecution history. *Id.*; *Laryngeal Mask Co.*, 618 F.3d at 1372 ("To be a lexicographer, a patentee must use a 'special definition of the term [that] is clearly stated in the patent specification or prosecution history'") (quoting *Vitronics*, 90 F.3d at 1580)); *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1370 (Fed. Cir. 2005) ("When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description"); *Renishaw*, 158 F.3d at 1249 ("The patentee's lexicography must, of course, appear 'with reasonable clarity, deliberateness, and precision' before it can affect the claim.") (quoting

*In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994))).  Such a definition is most often found in the specification, as it is "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

At first blush, the disputed claim language appears to be a clear lexicographic definition of "moisture tight."  Indeed, claim terms set off by: (1) quotation marks in the specification and (2) words such as "is," "means," or "as used herein" are "often a strong indication that what follows is a definition." *Sinorgchem Co. v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007); *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1054 (Fed. Cir. 2004); *see also Merck & Co.,* 395 F.3d at 1378 (Rader, J., dissenting) ("The choice of the words 'phrase' and 'means,' combined with the use of quotation marks to set the phrase off from the rest of the sentence, unmistakably notify a reader of the patent that the patentee exercised the option to define the entire phrase without respect to its ordinary meaning .…").  CSP uses these indicators in the '137 patent specification to set off the term "moisture-tight."  Yet, as CSP points out, each numerical ingress value is dependent upon a different embodiment. (*See, e.g.,* '137 patent, col. 6, ll:32-39) (" . . . 'moisture-tight' . . . mean[s] the moisture ingress . . . was less than about 1500 micrograms of water, in another embodiment, about 500 micrograms of water . . . .").

"Interpretation of descriptive statements in a patent's written description is a difficult task, as an inherent tension exists as to whether a statement is a clear lexicographic definition or a description of a preferred embodiment." *E-Pass Tech., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003).  The tension exists because, under

the rules of claim construction, the court must interpret claims in view of the specification, but may not "import[] limitations from the specification into the claims." *Id.* ("The problem is to interpret claims 'in view of the specification' without unnecessarily importing limitations from the specification into the claims.").

The court finds that one of ordinary skill in the art would view the disputed claim language not as a lexicographic definition, but more as an example of what "moisture tight" means.  Although the specification uses the terms "as used herein" and "means" to set off "moisture tight," the specification does not use clear, deliberate, and precise words from which one of ordinary skill in the art would understand that the numerical ingress values are meant to cover *all* embodiments claimed in the patent.  Instead, the specification sets off each numerical ingress value with words such as "in another embodiment," and concludes with "in yet another embodiment."  To construe "substantially moisture tight" by reference to the specification, as advocated by Süd Chemie, would impermissibly import limitations from the specification into the claims. *Id.*; *see also Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988) ("[P]articular embodiments appearing in the specification will not generally be read into the claims…. What is patented is not restricted to the examples, but is defined by the words in the claims . . . .").

**IV.     Conclusion**

The purpose of this order is to construe the claims placed in issue and more specifically the terms highlighted by the parties.   This being done, the parties may proceed accordingly with the underlying infringement suit.

**IT IS SO ORDERED** this 3rd day of June 2013.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically To Registered Counsel of Record.