UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CSP TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | 4:11-cv-00029-RLY-WGH |
| SÜD-CHEMIE AG, ) | |
| SÜD-CHEMIE, INC., ) | |
| AIRSEC S.A.S., ) | |
| CLARIANT PRODUKTE ) | |
| DEUTSCHLAND GMBH, ) | |
| CLARIANT CORPORATION, and ) | |
| CLARIANT PRODUCTION (FRANCE) ) | |
| S.A.S. ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

CSP Technologies, Inc. ("CSP") is a leading innovator in the field of plastic packaging, and is the owner of United States Patent No. 7,537,137, entitled "Resealable Moisture Tight Container Assembly For Strips And The Like Having A Lip Snap Seal" (the "'137 patent"). As the title of the patent suggests, the patent relates to substantially moisture-tight container and lid assemblies that can be used to store and package moisture-sensitive items, such as diagnostic test strips, using dessicant entrained polymer technology. Defendants, Süd Chemie AG, Süd Chemie, Inc., and Airsec S.A.S., Clariant Produkte Deutschland GmbH, Clariant Corporation, and Clariant Production (France)

1

S.A.S.[1], are competitors of CSP in this field, and are the owners of the Accused Products, the Handy Active Tubes®. The Accused Products are described by the parties as vial-shaped containers. CSP alleges that the Defendants are infringing claims 1-5 and claim 7 of the '137 patent by, *inter alia*, manufacturing, selling and/or importing the Accused Products into the United States, either literally or under the doctrine of equivalents. Defendants now move for summary judgment of noninfringement. For the reasons set forth below, that motion is **GRANTED.**

## I.   Background

The court's infringement analysis involves two steps: claim construction of the asserted claim(s) and a determination of whether the accused method or process infringes the asserted claim(s). *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). "Direct infringement requires proof by preponderant evidence that the defendant performs (if a method claim) or uses (if a product claim) each element of a claim, either literally or under the doctrine of equivalents." *Cheese Sys., Inc. v. Tetra Pak Cheese and Powder Sys., Inc.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013). The first step, claim construction, is an issue of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-85 (1996). The second step, comparing the properly construed claims to the allegedly infringing device, is an issue of fact. *Id*.

Independent claims 1 and 7 contain virtually identical claim language, and recite, in pertinent part:

---

[1] Due to corporate restructuring, the court recently granted CSP leave to amend the Complaint to include the following Defendants, Clariant Produkte Deutschland GmbH, Clariant Corporation, and Clariant Production (France) S.A.S.

1. A *substantially moisture tight* container and lid assembly for storing and packaging moisture-sensitive items comprising: an assembly with a container and a lid,

   a) the lid is attached by a hinge to *an upper housing portion of the container*, the lid has an outer periphery that extends over at least a portion of the container, the lid is provided with a skirt that extends downwardly therefrom,

   b) the container has a container base, and a sidewall extending upwardly from the container base,

      i) a top of the container is provided with an opening that permits access to an interior of the container, *wherein the opening is spaced away from an outer surface of the sidewall of the container*. . .

      ii) the opening of the top of the container is bounded by a lip that extends upward from the top of the container, the lip of the top of the container extends around the periphery of the opening of the top of the container,

      iii) the skirt of the lid is positioned at a location on the lid that allows the skirt of the lid to enter into *a closing relationship* with the lip of the top of the container, . . .

      iv) the lid further includes a flexible lip seal member that extends downwardly therefrom, the flexible lip seal member of the lid is configured to abut at least a portion of the interior side of the lip of the top container surface when the lid is in the closed position, wherein the flexible lip seal member is designed to be sufficiently deflective so as to provide a sealing position, . . . which in combination with the closing relationship between the skirt of the lid and the lip of the top of the container results in a *substantially moisture tight* seal between the lid and the container . . . .

Claims 2, 3, 4, and 5 are dependent claims of independent claim 1. A dependent claim is "construed to incorporate by reference all the limitations of the claim to which it refers."

35 U.S.C. § 112 (d).  For example, dependent claims 2-4 require "[t]he substantially moisture tight container and lid assembly of claim 1," and dependent claim 5 requires "[t]he substantially moisture tight container and lid assembly for storing and packaging moisture-sensitive items of claim 1."

Defendants filed the present motion for summary judgment on the same day they filed their brief on claim construction regarding the meaning of four disputed claim terms, shown in italics above: (1) "an opening wherein the opening is spaced away from an outer surface of the sidewall of the container"; (2) "a closing relationship"; (3) "an upper housing portion of the container" and (4) "substantially moisture tight." Defendants argued that, based upon their interpretation of those disputed claim terms, Defendants' accused products do not infringe claims 1-5 and 7 of the '137 patent either literally or under the doctrine of equivalents.

After the Defendants' motion for summary judgment was fully briefed, the court issued its Entry on Claim Construction.  The court agreed with CSP's construction with respect to three of the four disputed claim terms:  (1) "an opening wherein the opening is spaced away from an outer surface of the sidewall of the container"; (2) "a closing relationship"; and (3) "substantially moisture tight."  The court did not agree with CSP's construction of the term "an upper housing portion of the container," and construed it as "an upper housing portion of the container that is separate and distinct from the container base" – the construction advocated by Defendants.  With this background in mind, the court now turns to the merits of the present motion.

**II.     Discussion**

Defendants' move for summary judgment of noninfringement either literally or under the doctrine of equivalents.

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Strattec Sec. Corp. v. Gen. Auto. Specialty Co., Inc.*, 126 F.3d 1411, 1418 (Fed. Cir. 1997) (citing *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989)). Defendants' Handy Active Tubes® consist of a container with a flip-top lid and a built-in dessicant to sustain a moisture-free environment. CSP understands that Defendants' accused product does not have "an upper housing portion that is separate and distinct from the container base." Accordingly, CSP concedes that, pursuant to the court's claim construction, Defendants' accused product does not literally infringe the '137 patent.

Infringement under the doctrine of equivalents is evaluated under an element-by-element basis, such that every claimed element of the invention, or its equivalent, is present in the accused product. *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). Defendants argue the doctrine of equivalents does not apply to the parties' dispute for three principle reasons. First, they argue CSP failed to put forth any evidence of infringement under that theory in response to Defendants' original motion for summary judgment. Second, they argue CSP cannot pursue infringement under the doctrine of equivalents because CSP dedicated a one-piece container to the public in the

'137 patent's written description, but did not claim it. Lastly, they argue that application of the doctrine of equivalents would "vitiate" the requirement that the upper housing portion be "separate and distinct" from the container base. The court will discuss each argument, in turn, below.

### A. CSP's Original Response to Defendants' Motion

As noted above, Defendants filed their motions for summary judgment before the court's Entry on Claim Construction. In response to Defendants' motion for summary judgment, CSP argued that, under its proposed claim constructions as supported by its expert in the field of plastics technology and polymer processing, Dr. Tim Osswald, Defendants' accused products literally infringed the '137 patent, and that "a determination of infringement under the doctrine of equivalents would be premature at this time." CSP reserved the right, however, to supplement Dr. Osswald's expert report if the court were to reject its proposed constructions. Following the court's Entry on Claim Construction, CSP requested, and the Magistrate Judge granted CSP the opportunity to file a supplemental brief in response to Defendants' motion for summary judgment pursuant to the parties' Case Management Plan. (*See* Docket # 56, at 8, § III.P ("If required by the Court's *Markman* decision, parties can request that supplemental non-damages expert reports and/or additional summary judgment motion practice be added to the CMP.")). CSP did so, and the Defendants filed a response to that supplemental brief. On this record, the court finds CSP did not fail to respond or to submit evidence of infringement under an equivalents theory in a timely fashion.

### B. Disclosure-Dedication Rule

6

The disclosure-dedication doctrine bars infringement under the doctrine of equivalents when "particular subject matter [has been] disclosed in the patent specification but not claimed . . . ." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1368 (Fed. Cir. 1999). In such situations, the unclaimed subject matter is "deemed to have been surrendered [to the public]." *Id.*; *see also Johnson & Johnston Assocs. v. R.E. Serv.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("When a patent drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public."). To allow "[a]pplication of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would 'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.'" *Johnson & Johnston Assocs.*, 285 F.3d at 1054 (quoting *Sage Prods. Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1422 (Fed. Cir. 1997)); *see also Conopco, Inc. v. May Dep't Stores, Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) ("The doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'") (citations omitted)).

The disclosure-dedication rule "is not without restriction." *Sandisk Corp. v. Kingston Tech. Co., Inc.*, 695 F.3d 1348, 1363 (Fed. Cir. 2012). The disclosure must be more than a generic reference in a written specification; instead, "'the disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed but not claimed.'" *Id.* (quoting *PSC Computer Prods. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)). Further, "'before unclaimed subject matter is deemed to have been dedicated to the public, the unclaimed subject matter must

7

have been identified by the patentee as an alternative to a claim limitation.'" *Id*. at 1364 (quoting *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005)). Whether this rule prevents a patentee from pursuing application of the doctrine of equivalents is an issue of law. *Id*.

Here, Defendants argue CSP disclosed one-piece containers in the '137 patent's written description, but failed to claim one-piece containers. The court's construction of independent claims 1 and 7 – i.e., that the upper housing portion of the container must be separate and distinct from the container base – supports CSP's argument that CSP *claimed* only two-piece containers.

The '137 patent written description discloses both one-piece and two-piece containers, as illustrated in Figures 6-9 and 12 (two-piece containers) and Figure 10 (one-piece container). Both one- and two-piece containers are also disclosed in the detailed description of the '137 patent. (*See* '137 patent, col. 4, ll:4-6 ("In one embodiment, the container can be formed as a single closed unit, with the hinge joining the lid portion to the container portion."; id., col. 4 ll:42-44 ("In a further embodiment, the lid and container can be formed in a single piece (for example, joined at the hinge). . . ."); *id*., col. 4, ll:7-9) ("In yet another embodiment, the container assembly comprising the base and upper housing portion can be molded separately."); *id*., col. 4, ll:47-48 ("An embodiment depicting a two-part assembly is illustrated in FIGS. 6 to 9 and 12.")). Indeed, CSP's own expert, Dr. Osswald, stated in his Supplemental Expert Report that "the '137 patent discloses embodiments where the container base and upper housing are two pieces (*see, e.g.*, Figure 6) and embodiments where the container base and upper

8

housing portion are one piece (*see, e.g.*, Figure 10)." (Supplemental Expert Report of Dr. Tim A. Osswald ("Osswald Supp. Report") ¶ 26). There is thus no dispute that one of ordinary skill in the art would have understood that the '137 patent specifically discloses both one- and two-piece containers. Yet, as noted above, CSP claimed only two-piece containers.

The court's understanding of the '137 patent is supported by the claims in United States Patent No. 8,528,778 (the "'778 patent"), which is a continuation-in-part of the '137 patent. Both patents claim a container and lid assembly, but only the '137 patent claims "the lid is attached by a hinge to an upper housing portion of the container." ('137 patent, col. 6, claim 1(a)). In simple terms, the '137 patent claims two-piece containers, and the '778 patent literally claims "wherein the container is a single piece container." (*See* U.S. Patent No. 8,528,778, col. 8, claim 6). Because CSP specifically disclosed one-piece containers in the '137 patent's written description, but did not claim one-piece containers, CSP is barred under the disclosure-dedication rule from using the doctrine of equivalents to reclaim one-piece containers such as Defendants' Handy Active Tubes®.

### C. Claim Vitiation

The Federal Circuit recently explained that "'[v]itiation' is not an exception to the doctrine of equivalents, but instead a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere*, 703 F.3d at 1356 (quoting *Warner-Jenkinson*, 520 U.S. at 39 n.8). Accordingly, the "proper inquiry" is to apply the doctrine of equivalents, asking "whether an asserted equivalent represents an 'insubstantial difference' from the claimed element, or 'whether the substitute element

9

matches the function, way, and result of the claimed element.'" *Id*. (quoting *Warner-Jenkinson*, 520 U.S. at 40); *see also Brilliant Inst., Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (7th Cir. 2013) ("[V]itiation applies when one of skill in the art would understand that the literal and substitute limitations are not interchangeable, not insubstantially different, and when they do not perform substantially the same function in substantially the same way, to accomplish substantially the same result."). "If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents." *Deere*, 703 F.3d at 1356. (citing *Warner-Jenkinson*, 520 U.S. at 39 n. 8). Whether an omitted element is supplied by an equivalent device or structure is ordinarily an issue of fact. *Id*.

The doctrine of claim vitiation has its clearest application where the accused device contains the polar opposite or antithesis of the claimed structure. *Brilliant Inst.*, 707 F.3d at 1347 (citing *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006)). This makes sense, as elements that are the opposite of one another are likely not insubstantially different. *Id*. For example, the Federal Circuit concluded that a competitor's bingo game did not infringe the plaintiff's patents claiming alternative methods of playing bingo either literally or under the doctrine of equivalents because the accused version determined a winning combination *after* the game started, whereas the patented gaming device determined a winning combination *before* the game started. *Planet Bingo*, 472 F.3d at 1345; *see also Wleklinski v. Targus, Inc.*, 258 Fed. Appx. 325, 329-30 (Fed. Cir. 2007) (refusing to apply the doctrine where the proposed application would change "separate sections made of different materials" to "a single unitary material

10

made of the same fabric"); *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (refusing to apply the doctrine where the proposed application would change "mounted" to "unmounted"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (refusing to apply the doctrine where the proposed application would change "majority" to "minority");

 Here, Defendants argue the court should refuse to apply the doctrine of equivalents because the accused unitary vial-shaped containers are the antithesis or polar opposite of the two-piece containers claimed in the '137 patent. Thus, a finding of infringement under the doctrine of equivalents would vitiate the '137 patent's requirement that the container consist of (1) an upper housing portion *that is separate and distinct from* (2) a container base.

 In construing the term "upper housing portion of the container" as separate and distinct from the container base, the court reasoned that the dictionary definition of the word "housing" means something that "covers and protects" something else. Thus, in this case, the "upper housing portion of the container" "covers and protects" the contents in the container. The court also analyzed the context of the claim, and noted that subparts 1(a) and (b) of independent claim 1 (and by extension, dependent claims 2-5, and claim 7) describe the container as having a lid, a hinge, an upper housing portion, a container base with sidewalls extending upward, and a container top (meaning an opening at the top). Finally, the court noted that each time the specification uses the term "upper housing" to describe the container, the specification describes the container as having an upper housing and a separate and distinct container base. By contrast, the Accused

11

Product does not have an upper housing portion; instead, it has a lid, a hinge, a container base with sidewalls extending upward, and a container top.

In Dr. Osswald's Supplemental Expert Report, he opines that the court's construction of "an opening wherein the opening is spaced away from the outer surface of the sidewall of the container" meant that the court "rejected the Defendants' argument that the claims can not read on vial shaped containers." (Osswald Supp. Report ¶ 20). He then opines that the integral upper housing portion of the accused product is insubstantially different from an upper housing portion that is separate from the container base. His supplemental affidavit includes a visual depiction of two vial-shaped containers whose shape and dimensions are exactly the same. (See below). One represents an embodiment (Figure 10) from the '137 patent, and the other represents the Accused Product. According to Dr. Osswald, the integral "upper housing portion" of the Accused Product is simply the top portion of the container. (*See* Osswald Supp. Report. ¶ 23 ("The Accused Product's upper housing portion and container base are made together as one piece.")).

| Accused Product with two-piece container and lid | CSP vial with integral container and lid |
|---|---|
| *(diagram showing Lid, Upper housing portion, Container Base)* | *(diagram showing Lid, Upper housing portion, Container Base)* |

Dr. Osswald's representation of the top portion of the accused product blends the "upper housing portion" of the container with the upper limit of the sidewalls. Dr. Osswald's representation thus fails to account for the fact that the "upper housing portion of the container" is meant to be a separate and distinct part of the container that covers and protects the container's contents. Merely pointing out the top of the sidewalls as the "upper housing portion" reads that limitation (that the "upper housing portion" be separate and distinct) out of the patent. The court finds a one-piece container is not the equivalent of a two-piece container, and to find otherwise would entirely vitiate that claim element. No reasonable jury would find otherwise.

### III. Conclusion

For the reasons set forth above, the court finds CSP is barred from asserting the doctrine of equivalents in this case on two independent bases: (1) the disclosure-dedication rule and (2) the claim vitiation doctrine. Accordingly, the court hereby **GRANTS** Defendants' Motion for Summary Judgment of Noninfringement (Docket # 107).

**SO ORDERED** this 6th day of February 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.