UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| CSP TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:11-cv-00029-RLY-WGH |
| | ) | |
| SUD-CHEMIE AG, | ) | |
| SUD-CHEMIE, INC., | ) | |
| AIRSEC S.A.S., | ) | |
| CLARIANT PRODUKTE | ) | |
| DEUTSCHLAND GMBH, | ) | |
| CLARIANT CORPORATION, | ) | |
| CLARIANT PRODUCTION (FRANCE) | ) | |
| S.A.S., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' BILL OF COSTS**

Following the court's grant of summary judgment of non-infringement in favor of the Defendants, they filed a timely Bill of Costs pursuant to 28 U.S.C. § 1920 seeking costs in the amount of $359,215.53. Plaintiff objects. The court, being duly advised, finds Defendants are entitled to costs in the amount of $94,766.88.

**I.    Legal Standard**

Federal Rule of Civil Procedure 54(d) provides that "unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Pursuant to 28 U.S.C. § 1920, these costs are limited to:

(1)  Fees of the clerk and marshal;

1

(2) Fees for printed and electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

There is a "strong presumption" that the prevailing party will recover its costs under Rule 54(d). *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997). The "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). In determining whether to tax costs against the losing party, the court engages in a two-part inquiry: "(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000).

**II. Analysis**

Pursuant to 28 U.S.C. § 1920(4), Defendants seek costs related to electronic discovery in the amount of $358,614.65. Plaintiff argues these costs are not recoverable per the parties' agreement set forth in the parties' Case Management Plan ("CMP"). Plaintiff further argues that, even if Defendants did not waive their right for costs

associated with e-discovery, Defendants submitted costs for TIFF[1] conversion services is unreasonable.

### A. Waiver

The parties' CMP reads, in relevant part:

> The parties agree that all document discovery be produced in an electronic and searchable format, specifically as searchable (OCR[2]) TIFF images and that each party bear its own production costs. Further, with respect to Electronically Stored Information (ESI), each party reserves the right to request that the document be produced in a native format upon a showing of a particularized need.

(Filing No. 56, Case Management Plan at III.Y). Plaintiff interprets this agreement as one in which the parties agreed to bear their own production costs. Plaintiff argues that "only production costs, and not other electronic discovery costs, are recoverable under 28 U.S.C. § 1920." Therefore, because "Defendants agreed to bear their own *recoverable* costs, i.e., production costs, they cannot now recover them from [Plaintiff]."

The court finds Plaintiff's interpretation of the parties' agreement is unreasonably expansive. The agreement is included in the parties' CMP to help streamline the process of document production during the discovery phase of the case by eliminating the need to exchange invoices every time a document is processed and produced. (Declaration of Sean M. Sullivan ("Sullivan Decl." ¶ 2). The terms of the agreement do not address the

---

[1] Tagged Image File Format ("TIFF") is a file format that is easily searchable for specific terms. *See Race Tires*, 674 F.3d at 161.

[2] Optical Character Recognition ("OCR") is "[a] technology process that translates and converts printed matter on an image into a format that a computer can manipulate . . . and, therefore, renders that matter text searchable." *See id.* at 162 n. 6.

3

costs recoverable to a prevailing party upon completion of the case. The court therefore finds that Defendants did not waive their right to costs for the production of e-discovery.

### B. Plaintiff's Objections to Defendants' Copying Costs

The most expensive category of costs in this case is related to e-discovery. The Federal Rules of Civil Procedure do not expressly provide for the recovery of e-discovery costs. Consequently, the costs of e-discovery may only be taxed if they fit within the confines of 28 U.S.C. § 1920(4), which allows for the recovery of "fees for the exemplification and the costs of making copies . . . ."

The Seventh Circuit briefly addressed the issue of e-discovery costs in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). There, the Court held that the "costs for converting computer data into a readable format in response to plaintiffs' discovery requests" are recoverable under 28 U.S.C. § 1920(4). *Id*. at 591. That decision did not, however, identify what processes were involved, and, to date, the Seventh Circuit has not determined whether § 1920(4) allows for recovery of other services involving ESI. *See Chicago Bd. Options Exch., Inc. v. Int'l Securities Exch., LLC*, Case No: 07 CV 623, 2014 WL 125937, at *8 (N.D. Ill. Jan. 14, 2014) (noting the open question). Thus, the court seeks guidance from the decisions of other circuit courts and district courts in the Seventh Circuit. *Id*.

In *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, the prevailing party sought to recover costs for (1) collecting and preserving ESI; (2) processing and indexing ESI; (3) keyword searching of ESI for responsive and privileged documents; (4) converting native files to TIFF; and (5) scanning paper documents to create electronic

images. *Race Tires*, 674 F.3d 158, 167 (3rd Cir. 2012). The Third Circuit found that "only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involving 'copying'" were recoverable as the costs of making copies under § 1920(4). *Id.* at 171. The Court reasoned that:

> Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies.

*Id.* at 169. The Fourth Circuit found the *Race Tires* decision highly persuasive and concluded that the prevailing party was only entitled to the costs of "converting electronic files to non-editable formats, and burning the files onto discs." *Country Vitner v. N.C. v. E.&J. Gallo Winery*, 718 F.3d 249, 260 (4th Cir. 2013).

In *CBT Flint Partners, LLC v. Return Path, Inc.*, the Federal Circuit, applying Eleventh Circuit law, agreed with the Third and Fourth Circuits except in one respect: it concluded that parties could recover for "the stage-one costs of imaging source media and extracting documents in a way that preserves metadata." 737 F.3d 1320, 1333 (Fed. Cir. 2013); *see also Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 297 (6th Cir. 2015) (citing *CBT Flint*, the Sixth Circuit held that "a plain reading of the statute authorizes court to tax the reasonable cost of imaging, provided the image file was necessarily produced for use in the case."). The Federal Circuit observed that "imaging" is a term of art in the technical world that means "copying." *CBT Flint Partners*, 737 F.3d at 1328. The Court therefore concluded that "there is no good reason, as a default

5

matter, to distinguish copying one part of an electronic document (*i.e.*, the part that is visible when printed) from copying other parts (*i.e.*, parts not immediately visible) when both parts are requested." *Id*. at 1333.

A majority of district courts from this circuit follow the reasoning of *Race Tires* and *Country Vitner* "to deny recovery of the costs of services – such as data loading, data processing, de-duplication, and culling – used in preparing ESI for conversion into a readable format." *See Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 902 (N.D. Ill. 2014) (denying costs of preparing electronic data to be converted to TIFF format but allowing costs of TIFF conversion itself); *see also Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 11 CV 2450, 2015 WL 351244, at *6 (N.D. Ill. Jan. 27, 2015) (denying costs for "obtaining and culling enormous amounts of ESI," and for gathering e-mails that contain metadata); *Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723, at *6 (N.D. Ill. Jan. 15, 2014) (denying costs of uploading and hosting three boxes of documents on a standard management service); *In re: Text Messaging Antitrust Lit.*, No. 08 C 7082, 2014 WL 4343286, at *3 (N.D. Ill., Sept. 2, 2014) (denying costs for services leading up to the production of documents such as organizing, analyzing and processing ESI); *Chicago Bd. Options Exch.*, 2014 WL 125937, at *9 (denying costs of "creating a litigation database, electric data hosting or other steps (such as analyzing metadata or deduplication) leading up to making copies of materials") (internal quotations omitted); *Phillips v. WellPoint, Inc.*, No. 3:10-CV-357-JPG-SCW, 2013 WL 2147560, at *5 (S.D. Ill. May 16, 2013) (denying costs of "logical document determination" and extraction of metadata); *Johnson v. Allstate Ins. Co.*, No.

07 C 781, 2012 WL 4936598, at *5-6 (S.D. Ill. Oct. 16, 2012) (denying costs for creating a litigation database, processing ESI, and extracting metadata). *But see Wisconsin Res. Prot. Council v. Flambeau Min. Co.*, No. 11-CV-45-bbc, 2014 WL 3810884, at *2 (W.D. Wis. Aug. 1, 2014) (awarding costs for third-party forensic expert to provide electronic discovery-related services including the "extraction" of 20 years of information from defendant's mine site at the request of plaintiffs); *Loparex, LLC v. MPI Release, LLC*, No. 1:09-CV-1411-JMS-TAB, 2012 WL 3065428, at *8 (S.D. Ind. July 27, 2012) (awarding costs for "electronically harvesting, processing, and producing electronic data").

Here, Defendants seek the following e-discovery costs:

(1) Document Collection ($30,444.58)

(2) Scanning ($4,987.06)

(3) OCR ($297.72)

(4) Image/File Copy ($3,440.85)

(5) TIFF/PDF Conversion ($82,269.00)

(6) Password Recovery ($1,500.00)

(7) Searching ($72,967.50)

(8) Litigation Copies ($2,938.69)

(9) Bates Labeling ($232.68)

(10) Data Hosting/Electronic Document Storage Services ($67,750.00)

(11) Data Hosting/Electronic Document Storage Services ($63,985.00)

(12) E-Discovery Specialist ($27,801.57)

They also request the fees of the Clerk ($120) and the costs of two transcripts ($480.88).

Plaintiff does not dispute that Defendants are entitled to the fees of the Clerk, the cost for transcripts, and the e-discovery costs for scanning, OCR, and bates labeling. Plaintiff will be taxed for those costs in the amount of $6,118.34.

Plaintiff objects to Defendants' request for costs associated with document collection, password recovery, searching, data hosting/electronic storage services, and the fee for an e-discovery specialist. The court agrees; these costs are not sufficiently related to "making copies" within the meaning of § 1920(4). *See, e.g., Race Tires*, 674 F.3d at 170. Those costs will not be taxed.

Finally, Plaintiff objects to Defendants' cost recovery for TIFF/PDF conversion, image/file copy, and litigation copies. Plaintiff concedes Defendants generally may recover for TIFF conversion, but argues that in this particular case, Defendants' requested charges are unreasonable for two reasons: (1) TIFF conversion "is a routine task that is typically done by law firms with no outside vendor charges" and (2) the conversion cost charged by Defendants' outside vendor is unreasonably high.

The evidence reflects that Defendants hired an outside vendor, AC Forensics, to perform the TIFF conversion because many of the documents requested by Plaintiff in this case were located in Defendants' facilities in France and Germany. (Filing No. 214-4, Declaration of Andy Cobb ("Cobb Decl.") ¶ 2). Certain European data privacy concerns arose that required a heightened level of data protection that AC Forensics, a certified member of the U.S.-EU Safe Harbor program, was able to provide. (Sullivan Decl. ¶ 3; Cobb Decl. ¶ 2). This, in turn, required AC Forensics to host all of the data

collected from France and Germany to preserve it throughout the entire case. (Sullivan Decl. ¶ 3; Cobb Decl. ¶ 2). Consequently, it was most practical for AC Forensics to perform the TIFF conversion prior to any review or production by Defendants' counsel. (Cobb Decl. ¶ 3). Defendants' explanation for hiring an outside vendor is credible and reasonable.

As for Plaintiff's second objection, AC Forensics charged $850 per gigabyte ("GB") for the services it rendered to Defendants during the discovery phase of this case (mid-2011 to mid-2012). According to Andy Cobb, a partner with AC Forensics, that rate is consistent with other comparable vendors for that time period. (Cobb Decl. ¶ 4). Plaintiff disagrees, stating that the standard rate, according to its counsel's in-house e-discovery project manager, Danny Huerta, is $400-$500/GB. (Filing No. 209-1, Declaration of Danny Huerta ¶ 5).

It is unclear from Mr. Huerta's declaration and from the vendor price list submitted by Plaintiff whether the asserted rate of $400-$500/GB rate is from the relevant time period (mid-2011 to mid-2012) when the conversion services were actually rendered to Defendants in this case. Plaintiff's asserted rate is more consistent with the rate currently charged for TIFF conversion. (Id. ¶ 5). Since the time AC Forensics performed TIFF conversion services for Defendants in this action at $850/GB, TIFF conversion rates have declined due to advances in technology. (*Id.* ¶ 5). For example, AC Forensic's successor, One Source Discovery, currently charges $550/GB for TIFF conversion. (*Id.* ¶ 5). The court finds Mr. Cobb's testimony to be credible. Therefore, Plaintiff will be taxed for the TIFF/PDF conversion in the amount of $82,269.00.

9

Defendants' request for the cost of image/file copies and litigation copies is granted. *See CBT Flint Partners*, 737 F.3d at 1333. Counsel for Defendants testified that those costs were necessarily incurred in defense of Plaintiff's claims. (Filing No. 178, Declaration of Paula S. Fritsch ¶¶ 2, 3). Plaintiff will be taxed in the amount of $6,379.54.

### III. Conclusion

For the foregoing reasons, Defendants' request for costs (Filing No. 177) is **GRANTED** in the amount of $94,766.88: (1) $120.00 for fees to the Clerk; (2) $480.88 in transcript fees; and (3) $94,166.00 for exemplification and the cost of making copies.

**SO ORDERED** this 20th day of May 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.